UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**ROBERT RICHARD UNDERWOOD,**

     **Petitioner,**

  v.          Case No. 24-CV-1145

**BRIAN CAHAK,**
 *Warden, Oshkosh Correctional Institution,*

     **Respondent.**

## DECISION AND ORDER

**1. Background**

  After a bench trial, the Dodge County Circuit Court convicted Robert Richard Underwood of knowingly operating a motor vehicle while suspended, causing death, as well as knowingly operating a motor vehicle while suspended, causing great bodily harm. *State v. Underwood*, No. 2021AP1629-CR, 2023 WL 413207, at *1, 2023 Wisc. App. LEXIS 86, at *1 (Wis. Ct. App. Jan. 26, 2023); *see also* ECF No. 9-3 (state court decision on direct appeal). The only element in dispute at trial was whether Underwood knew, at the time of the fatal crash, that his operating privilege had been suspended. (ECF No. 9-3 at ¶ 4.)

The suspension stemmed from a speeding citation issued to Underwood for driving twenty-five miles per hour over the speed limit on March 29, 2017. (ECF No. 9-3 at ¶ 5.) The issuing officer testified that the citation informed Underwood that, if he failed to contest the citation or pay the fine, his operating privilege may be suspended. (*Id.*) Underwood failed to appear for his court date, so the circuit court entered a default judgment on May 11, 2017. (*Id.* at ¶ 6.) The default judgment imposed a thirty-day license suspension and a fine, but it further ordered that Underwood's operating privilege would be suspended for no less than thirty days and no more than two years if he failed to pay the fine. (*Id.*) The court mailed the default judgment to the address it had in its system for Underwood—in Butler, Wisconsin. (*Id.*)

Underwood failed to pay the required fine. (ECF No. 9-3 at ¶ 7.) On August 28, 2017, the circuit court issued an order suspending Underwood's operating privilege for two years. (*Id.*) The court electronically transmitted that order to the Department of Motor Vehicles (DMV) for it to process. (*Id.*) Underwood had registered a vehicle in his own name on August 16, 2017,[1] and submitted an address in Horicon, Wisconsin at that time. (*Id.* at ¶ 8.) Therefore, on August 29, 2017, the DMV mailed notice of Underwood's

---

[1] The court of appeals decision says that Underwood registered the vehicle in July. (ECF No. 9-3 at ¶ 8.) However, according to the trial transcript, Underwood purchased the vehicle on July 16, 2017, and completed the registration form with that date but did not actually register the vehicle with the DMV until August 16, 2017. (ECF No. 9-5 at 19:24–20:4, 146:18–24.)

suspension to the Horicon address. (*Id.*) Underwood's operating privilege remained suspended at the time of the crash—on September 17, 2017. (*Id.*)

At trial Underwood testified that he never received the suspension notices. (ECF No. 9-3 at ¶ 9.) He explained that he lived with his girlfriend in Juneau, Wisconsin and used his mother's address in Butler for business mail. (*Id.*) Underwood's mother testified that she would give his mail to Underwood's ex-bother-in-law, who lived in the upstairs apartment at the Butler address, to give in turn to Underwood's girlfriend, and from her to Underwood. (*Id.* at ¶ 10.) However, Underwood's mother found two bags of Underwood's mail among the ex-brother-in-law's belongings when he moved out sometime after the fatal crash. (*Id.*; *see also* ECF No. 9-5 at 80:17–21.) Underwood's mother also testified that she experienced trouble receiving mail at her residence for the past five years. (ECF No. 9-3 at ¶ 10.)

As for the Horicon address, Underwood testified that he used it to purchase a vehicle for his brother-in-law but never intended to submit it as his mailing address. (ECF No. 9-3 at ¶ 9.) Underwood's girlfriend testified that she owned the Horicon property but that nobody lived there in 2017 because it was uninhabitable. (*Id.* at ¶ 11.) Underwood testified that he first learned of his license suspension when he met with an officer at the impound lot about a week after the crash. (*Id.* at ¶ 9.)

Ultimately, the circuit court determined that Underwood knew his license was suspended at the time of the crash. (ECF No. 9-3 at ¶ 12.) The court found that

3

Case 2:24-cv-01145-WED    Filed 06/10/25    Page 3 of 9    Document 17

Underwood's mother and girlfriend testified credibly but that Underwood did not. (*Id.*) The court of appeals affirmed Underwood's conviction (*Id.* at ¶ 3), and the Wisconsin Supreme Court denied his petition for review. (ECF No. 9-4.)

Underwood now seeks federal habeas relief under 28 U.S.C. § 2254 on the ground that there was insufficient evidence to sustain his conviction. (ECF No. 1.) The court screened the petition in accordance with Rule 4 of the Rules Governing Section 2254 Petitions and ordered the respondent to answer. (ECF No. 5.) All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 8), and the petition is now ready for resolution.

**2. Habeas Law**

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court is permitted to grant relief to a state petition under 28 U.S.C. § 2254 only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). This is a "stiff burden." *Jean-Paul v. Douma*, 809 F.3d 354, 359 (7th Cir. 2015). "The state court's ruling

must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Carter v. Douma*, 796 F.3d 726, 733 (7th Cir. 2015) (itself quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

"Clearly established federal law" refers to a holding "of the United States Supreme Court that existed at the time of the relevant state court adjudication on the merits." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015) (citing *Greene v. Fisher*, 565 U.S. 34, 38 (2011); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "A decision is 'contrary to' federal law if the state court applied an incorrect rule—*i.e.*, one that 'contradicts the governing law' established by the Supreme Court—or reached an outcome different from the Supreme Court's conclusion in a case with 'materially indistinguishable' facts." *Id.* (quoting *Williams*, 529 U.S. at 405–06). A decision involves an unreasonable application of federal law if the state court identified the correct governing principle but unreasonably applied that principle to the facts of the case. *Williams*, 529 U.S. at 407–08. "A court's application of Supreme Court precedent is reasonable as long as it is 'minimally consistent with the facts and circumstances of the case.'" *Williams v. Thurmer*, 561 F.3d 740, 743 (7th Cir. 2009) (quoting *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999)).

"Even a clearly erroneous state court decision is not necessarily an unreasonable one." *Miller v. Smith*, 765 F.3d 754, 760 (7th Cir. 2014). Thus, a federal court could have the "firm conviction" that a state court's decision was incorrect but, provided that error

5
Case 2:24-cv-01145-WED   Filed 06/10/25   Page 5 of 9   Document 17

is not objectively unreasonable, nonetheless be required to deny the petitioner relief. *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003).

3. **Analysis**

As his sole claim for relief Underwood argues that the evidence surrounding his knowledge of the license suspension was constitutionally insufficient to sustain his conviction. (ECF No. 10 at 8.) Underwood does not challenge the underlying facts. (*See id. generally*.) Rather, he argues that the state court improperly inferred from those facts that he actually knew his license was suspended. (ECF No. 10 at 15.)

"The applicable Supreme Court precedent regarding the sufficiency of the evidence is well established: 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Saxon v. Lashbrook*, 873 F.3d 982, 987–88 (7th Cir. 2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Here, the Wisconsin Court of Appeals cited *State v. Poellinger*, 451 N.W.2d 752, 757–58 (Wis. 1990), which substantively sets forth the same standard for sufficiency-of-the-evidence claims. (*See* ECF No. 9-3 at ¶ 15.) Therefore, the state court identified the correct federal standard.

In application, the court of appeals agreed with Underwood that the pivotal question turned on "whether the evidence at trial was sufficient to support a finding that Underwood received notice that his operating privilege *had* been suspended, not whether he knew that that was merely a potential or even likely consequence of the speeding

citation." (ECF No. 9-3 at ¶ 26.) The court pointed out that trial testimony supported the inference that Underwood received mail at the Butler and Horicon addresses. (ECF No. 9-3 at ¶ 26.) The court of appeals also acknowledged the trial court's unfavorable credibility finding (ECF No. 9-3 at ¶ 28), which is entitled to deference. *See House v. Bell*, 547 U.S. 518, 539 (2006) ("Deference is given to a trial court's assessment of evidence presented to it in the first instance."). Ultimately, the court of appeals concluded "that the evidence was sufficient to support a reasonable inference that Underwood received the default judgment and DMV notices of suspension." (ECF No. 9-3 at ¶ 29.)

To pass constitutional muster, this conclusion must be "minimally consistent with the facts and circumstances of the case." *Williams*, 561 F.3d at 743. Underwood testified that he used the Butler address to receive business mail, albeit with some difficulty (ECF No. 9-5 at 134:2–12), that he actually picked up mail from the Butler address on some occasions during the summer of 2017 (ECF No. 9-5 at 156:2–8), and that he chose to register a vehicle at the Horicon address about one month before the crash. (ECF No. 9-5 at 146:18–20, 148:3–13.) Underwood's girlfriend also testified that Underwood received "some mail" at the Butler address (ECF No. 9-5 at 124:22–24) and that she received junk mail (with the exception of utility bills) at the Horicon address. (ECF No. 9-5 at 101:19–102:4.) To her knowledge, Underwood never received any mail at the Horicon address. (ECF No. 9-5 at 102:5–8.)

Underwood does not contest that the DMV mailed the suspension notices (ECF No. 9-5 at 15:23–17:13), that the state court that adjudicated the speeding ticket had no record of its notice of default judgment being returned to sender (ECF No. 9-5 at 53:20–54:14), and that Underwood was in direct contact with the individuals who received mail at the relevant addresses (ECF No. 9-5 at 89:10–15, 118:15–119:22). (*See also generally* ECF Nos. 10, 16.) Ultimately, these circumstances can support a reasonable inference that Underwood received the suspension notices.

Therefore, the state court's finding that Underwood knew of his suspension is at least minimally consistent with the evidence introduced at trial. Because the evidence was constitutionally sufficient to sustain his conviction, the court must deny Underwood's petition for a writ of habeas corpus.

4. **Conclusion**

To be eligible for habeas relief, Underwood cannot merely demonstrate that a rational factfinder could have found in his favor. The federal standard requires a petitioner to establish that no reasonable factfinder could have concluded that the State met its evidentiary burden. *Saxon*, 873 F.3d at 987–88. Here, a reasonable factfinder could infer from the evidence introduced at trial that Underwood received the notices and knew about his license suspension. Therefore, the court of appeals did not make an unreasonable determination of the facts or unreasonably apply Supreme Court precedent.

Because the court finds that it must deny Underwood's petition, it must consider whether to grant him a certificate of appealability. *See* Rule 11, Rules Governing Section 2254 Cases. The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires more than showing merely that an appeal would not be frivolous. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). But this standard does not require that the applicant to show that some judges would grant the petition. *Id*. Rather, when the court has denied the petition on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The court concludes that Underwood has failed to make a substantial showing of a denial of constitutional right. *See* 28 U.S.C. § 2253(c)(2); Rule 11 of the Rules Governing Section 2254 Cases. Therefore, the court will deny him a certificate of appealability.

**IT IS THEREFORE ORDERED** that Underwood's petition for a writ of habeas corpus is **denied**. The petition and this action are **dismissed**. The court further denies a certificate of appealability. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of June, 2025.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge